1
2
3                    UNITED STATES DISTRICT COURT
4                    NORTHERN DISTRICT OF CALIFORNIA
5
6
7  GREGORY MARCELL JOHNSON,
8          Plaintiff,                    No. C 12-01580 PJH
9     v.                                **ORDER DENYING PLAINTIFF'S
                                         MOTION FOR SUMMARY JUDGMENT
10  MICHAEL ASTRUE, Commissioner of      AND GRANTING DEFENDANT'S
    Social Security,                     CROSS MOTION FOR SUMMARY
11                                       JUDGMENT**
           Defendant.
12  _____/
13

14        Plaintiff Gregory M. Johnson ("Johnson") seeks judicial review of the Commissioner

15  of Social Security's ("Commissioner") decision denying his claim for disability benefits

16  pursuant to 42 U.S.C. § 405(g).  This action is before the court on the parties' cross-

17  motions for summary judgment.  Having read the parties' papers and administrative record,

18  and having carefully considered their arguments and relevant legal authority, the court

19  DENIES Johnson's motion for summary judgment, GRANTS the Commissioner's cross-

20  motion for summary judgment, and AFFIRMS the Commissioner's final decision to deny

21  benefits.

22                              **BACKGROUND**

23        Johnson, who was 48 years-old when he filed for disability, is a functional illiterate

24  who completed school through the ninth grade in special education classes.  His past

25  relevant work was as a seasonal firefighter and cook supervisor.  He alleges disability

26  starting February 1, 2005, on the basis of a variety of ailments, including a separated left

27  shoulder, loss of hearing, and asthma.

28

*United States District Court*
*For the Northern District of California*

1    Johnson acquired sufficient quarters of coverage to remain insured through June 30,

2    2005.  Thus, Johnson needed to establish disability on or prior to June 30, 2005 to be

3    entitled to disability insurance benefits.  Currently, Johnson is receiving supplemental

4    security income ("SSI") under Social Security Title XVI.

5    On February 25, 2008, Johnson filed an application for a period of disability and

6    Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act.  The

7    claim was denied both initially, on May 2, 2008, and upon reconsideration, on July 3, 2008.

8    Thereafter, on September 2, 2008, Johnson requested a hearing.  On June 17, 2010, in

9    Ukiah, California, an administrative law judge ("ALJ") held a hearing at which Johnson, his

10   wife, and a vocational expert testified.  On July 27, 2010, the ALJ issued a decision, finding

11   Johnson not disabled during the time period in question.

12   Johnson then requested a review of the ALJ's decision by the Appeal Council, which

13   was denied on January 27, 2012, making the ALJ's ruling the final decision of the

14   Commissioner.  On March 29, 2012, Johnson brought this action seeking judicial review of

15   the ALJ's decision pursuant to 42 U.S.C. § 405(g).

16   **LEGAL STANDARD**

17   The Social Security Act provides for the payment of disability insurance benefits to

18   people who have contributed to the Social Security system and who suffer from a mental or

19   physical disability.  See 42 U.S.C. § 423(a)(1).  In order to evaluate whether a claimant is

20   disabled, an ALJ is required to use a five-step sequential analysis.  See 20 C.F.R.

21   § 404.1520(a)(4).  The ALJ may end the analysis at any step when it is determined that the

22   claimant is or is not disabled.  Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

23   At step one, the ALJ must determine whether the claimant is engaged in any

24   "substantial gainful activity," which would automatically preclude the claimant from receiving

25   benefits.  20 C.F.R. § 404.1520(a)(4)(i).

26

27

28

2

United States District Court

For the Northern District of California

1   If the claimant is not engaged in substantial gainful activity, at the second step the

2   ALJ must determine whether the claimant has a "severe" impairment, or combination of

3   impairments, which significantly limits his ability to do "basic work activities."  20 C.F.R.

4   § 404.1520(a)(4)(ii).

5   The third step requires that the ALJ determine whether the claimant's impairments

6   meet or equals an impairment in the Listing of Impairments ("Listing").  20 C.F.R.

7   § 404.1520(a)(4)(iii).  If the claimant's impairments meet or equals an impairment in the

8   Listing, the claimant is presumed to be disabled and benefits are awarded.  Id.

9   Alternatively, if disability cannot be established at the third step the analysis proceeds.  Id.

10   The fourth step requires the ALJ to determine whether the claimant has sufficient

11   "residual functional capacity" ("RFC") to perform his past relevant work despite the

12   limitations caused by any impairments.  20 C.F.R. § 404.1520(a)(4)(iv).  As the burden lies

13   with the claimant through the first four steps, the claimant must prove his inability to

14   perform past relevant work.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

15   Once this prima facie case is established, the burden shifts to the Commissioner at

16   the fifth step to show that the claimant may perform other gainful activity that exists in

17   significant numbers in the national economy, taking into consideration the claimant's

18   "residual functional capacity, age, education, and past work experience."  Id.; 20 C.F.R.

19   § 404.1520(a)(4)(v).  If the ALJ determines that the claimant can perform other work, then

20   the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(v).

21   **ALJ'S FINDINGS**

22   On July 27, 2010, the ALJ found Johnson not disabled under the Social Security Act,

23   concluding both that he possessed sufficient RFC to perform his past work as a cook

24   supervisor, and that he could perform other jobs within the national economy.

25   Administrative Record ("AR")  22-23.  The ALJ determined that Johnson last met the

26   insured status requirements of the Social Security Act on June 30, 2005.  AR 19.

27   At step one, the ALJ determined Johnson had not engaged in substantial gainful

28   activity during the period from his alleged onset date of February 1, 2005, through his date

3

last insured of June 30, 2005.  AR 19.  At step two, the ALJ found Johnson had the

following severe impairments which caused significant limitations in his ability to perform

basic work activities: "left shoulder separation and chronic obstructive pulmonary disease[1]"

("COPD").  AR 19.

Following these step two findings, the ALJ summarized a substantial portion of the

medical evidence from the record.  The ALJ discussed reports and opinions from Johnson's

emergency room visit just prior to his claim (12/5/2004), a visit to Haight Ashbury Free

Medical Clinic (4/20/2005), an examination with internal medicine specialist Dr. Hari Goyal

(4/20/2008), as well as summarizing Johnson and his representative's medical testimonies

from the administrative hearing (6/17/2010).

At step three, the ALJ concluded that Johnson "did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments in

20 C.F.R. Part 404, Subpt. P, App'x 1."  AR 20.  Having found that Johnson did not suffer

from a listed impairment, the ALJ assessed the entire record to determine Johnson's RFC

to assist in steps four and five.  AR 20.

The ALJ began his RFC determination by considering "all symptoms and the extent

to which these symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence," as well as "opinion evidence."  AR 20-21.  The ALJ

first found that Johnson's "medically determinable impairments" could reasonably be

expected to cause the alleged symptoms.  As a second step, however, he did not find

Johnson's statements concerning the "intensity, persistence and limiting effects of those

symptoms" to be credible.  AR 21.

The ALJ found Johnson's statements to be not credible to the extent that they were

inconsistent with the medical evidence, his testimony, and his work history.  AR 21.

---

[1]Chronic obstructive pulmonary disease (COPD) is a "general term used for those
diseases with permanent or temporary narrowing of small bronchi, in which forced expiratory
flow is slowed, especially when no etiologic or other more specific term can be applied."
Stedman's Medical Dictionary, 554 (28th ed. 2006).

United States District Court
For the Northern District of California

1  Specifically, the ALJ noted that there was very limited evidence of treatment for the

2  relevant period.  AR 21.

3      Johnson was seen in the emergency room on two occasions: December 5, 2004 and

4  April 11, 2005, but the treatment notes were very brief and contained no RFC assessment.

5  AR 21.  Additionally, a physician from the Haight Ashbury Free Medical Clinic excused

6  Johnson from work from April 20-25, 2005, but noted that he was able to do "light duty"

7  until an examination at San Francisco General Hospital, which the ALJ found consistent

8  with the assessed RFC that found Johnson capable of limited types of light work.  AR 21.

9  The ALJ noted there was limited follow-up after the ER visits, including nothing in 2006-

10  2007, despite the availability of the free clinic or a similar clinic.  AR 21.

11      Further, the ALJ held that there was insufficient medical support for the state

12  agency's assessment[2], in 2008, that Johnson could only "occasional[ly]" use his dominant

13  left upper extremity ("LUE").  AR 21.  In addition to the scarce medical records from the

14  relevant period and the lack of treatment in the following years, the ALJ noted that the April

15  20, 2008 consultative examination, performed almost three years after the date last

16  insured, showed Johnson's LUE motor strength to be 5/5 and his grip strength to be

17  normal.  AR 21.

18      The ALJ also found Johnson's credibility suspect because both his and his wife's

19  testimony indicated that he had hurt his left shoulder many years ago, while he was a

20  firefighter, although they could not specify any precise injury.  AR 21.  Additionally, Johnson

21  had performed his work as a cook supervisor despite this condition and had a generally

22  "spotty work history."  AR 21.

23      Given the medical reports and the ALJ's credibility assessment, the ALJ determined

24  that, through the date last insured, Johnson had the RFC to perform light work, as defined

25  in 20 C.F.R. 404.1567(b) except limited by "use of the dominant left arm as a helper hand

26  _____

27      [2] The "Physical RFC Assessment" was formulated by Dr. Luis R. Desouza on behalf of
the Disability Determination Services Division of the Department of Social Services.  AR 255-
28  60.

5

United States District Court

For the Northern District of California

1  with lifting; frequent but not constant use of the dominant left upper extremity for reaching

2  in all directions and fine and gross manipulation; no work around temperature extremes;

3  avoidance of concentrated exposure to fumes, odors, dusts, gases and poor ventilation;

4  and no climbing of ladders, ropes or scaffolds."  AR 20.

5          After assessing Johnson's RFC, the ALJ turned to step four to determine if

6  Johnson's RFC was sufficient for him to perform his past work.  The ALJ posed several

7  hypotheticals to the vocational expert ("VE") and, given the VE's testimony, the ALJ found

8  that Johnson was able to perform his past work as a cook supervisor, as actually

9  performed.  AR 22.  Although the finding at step four was sufficient to find Johnson not

10  disabled, the ALJ went on to step five of the sequential evaluation process as an alternative

11  finding.  AR 22.

12          At step five, the ALJ held that a 48 year old illiterate who is able to communicate in

13  English and perform "light work[3]," is considered per se "not disabled" using the Medical-

14  Vocational Rules and 20 C.F.R. Part 404, Subpt. P, App'x 2, regardless of the

15  transferability of job skills.  AR 22.  However, the ALJ held that given Johnson's RFC,

16  Johnson could not perform the full range of "light work" and thus his ability to perform work

17  was impeded by additional limitations beyond which the Medical-Vocational Rule 202.18

18  guidelines considered.

19          To determine the extent to which these limitations eroded the unskilled light

20  occupational base, the ALJ asked the VE whether jobs existed in the national economy for

21  an individual with Johnson's age, education, work experience, and RFC.  AR 23.  The VE

22  testified that, given all of these factors, Johnson would have been able to perform the

23  requirements of representative occupations such as "small products assembler (DOT

24  706.684-022), light and unskilled with a specific vocational preparation ("SVP") of 2, with

25  _____

26          [3]The full range of light work involves lifting no more than twenty pounds at a time with
    frequent lifting or carrying objects weighing up to ten pounds, and standing and walking for up
27  to six hours in an eight hour work day.  20 C.F.R. § 404.1567(b); Social Security Ruling (SSR)
    83-10, 1983 WL 31251, at *5.  Further, "the lifting requirement for the majority of light jobs can
28  be accomplished with occasional, rather than frequent, stooping."  Id. at *6.

United States District Court

For the Northern District of California

1    jobs numbering 250,000 in the nation and 2,400 in the San Francisco Bay area; and as a

2    video rental clerk (DOT 299.677-010), light and unskilled with an SVP of 2, with jobs

3    numbering 100,000 in the nation and 7,000 in the San Francisco Bay area." AR 23. The

4    ALJ, pursuant to SSR 00-4p, found the VE's testimony to be consistent with the Dictionary

5    of Occupational Titles ("DOT"). AR 23.

6        Based on the testimony of the VE, the ALJ concluded that, through the date last

7    insured, and considering Johnson's age, education, work experience, and RFC, that

8    Johnson was capable of making a successful adjustment to other work that existed in

9    significant numbers in the national economy. AR 23. Thus the ALJ found Johnson "not

10   disabled" in step five. AR 23.

11       As a result of the findings in steps four and five, the ALJ held that Johnson was not

12   disabled, as defined in the Social Security Act, at any time from February 1, 2005, the

13   alleged date onset date, through June 30, 2005, the date last insured. AR 23.

14                                  **STANDARD OF REVIEW**

15       Judicial review of the Commisioner's final decision to deny disability benefits is

16   permitted under 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings

17   are "supported by substantial evidence and if the [ALJ] applied the correct legal standards."

18   Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence "means

19   more than a mere scintilla, but less than a preponderance. It means such relevant

20   evidence as a reasonable mind might accept as adequate to support a conclusion."

21   Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (internal

22   quotation marks and citations omitted).

23       The court is required to view the administrative record as a whole, weighing both the

24   evidence that supports and detracts from the ALJ's conclusion. Drouin v. Sullivan, 966

25   F.2d 1255, 1257 (9th Cir. 1992). If the evidence is susceptible to more than one rational

26   interpretation, the court must uphold the ALJ's decision. Magallanes v. Bowen, 881 F.2d

27   747, 750 (9th Cir. 1989). Therefore, the ALJ is the final arbiter with respect to resolving

28

United States District Court

For the Northern District of California

1   ambiguities and conflicts within the medical evidence.  <u>Tommasetti v. Astrue</u>, 533 F.3d

2   1035, 1041-42 (9th Cir. 2008).

3       Also, the court may not reverse an ALJ's decision on account of a harmless error

4   that will not effect the outcome of the case.  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir.

5   2012) (citing <u>Stout v. Comm'r Soc. Sec. Admin.</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

6                                          **ISSUES**

7       Johnson seeks reversal of the Commissioner's denial of disability benefits, arguing

8   that:

9       (1)     The ALJ did not properly credit treating and examining source opinions

10              (a)     The ALJ misconstrued the medically determined "light duty" restriction

11                      as a determination that Johnson could perform "light work"

12              (b)     The ALJ did not properly credit the state agency's examining

13                      physician's opinion that found Johnson disabled

14      (2)     The ALJ improperly discredited Johnson's pain testimony

15      (3)     The ALJ's finding that Johnson could perform past relevant work was

16              improper

17              (a)     The ALJ failed to develop the record concerning earnings report to

18                      determine if Johnson's work in 2000 was relevant

19              (b)     The ALJ failed to perform a function-by-function analysis of past

20                      relevant work and account for Johnson's illiteracy

21      (4)     The ALJ improperly found that Johnson could perform work in the national

22              economy

23              (a)     The ALJ failed to properly apply the Medical-Vocational grids under

24                      which Johnson was per se disabled

25              (b)     The ALJ provided the VE with incomplete hypothetical regarding

26                      illiteracy and dominant hand restrictions

27              (c)     The ALJ failed to resolve conflicts between the VE's testimony and the

28                      DOT

(d)     The ALJ disregarded the VE's testimony concerning the availability of

jobs in the national economy

**DISCUSSION**

**1.      Whether the ALJ properly credited the treating and examining physician**

**opinions**

Johnson contends that the ALJ failed to properly credit the treating and examining

physician opinions when he assessed Johnson's RFC.  First, Johnson claims that the ALJ

misconstrued the treating physicians' opinions.  Second, Johnson claims that the ALJ did

not properly credit the state agency's examining physician's opinion that found Johnson

disabled.

**a. Whether the ALJ misconstrued the medically determined "light duty"**

**restriction as a determination that Johnson could perform "light work"**

First, Johnson argues that the ALJ misconstrued the treating physicians' opinions.

Specifically, Johnson contends that the ALJ confused the medically determined "light duty"

restriction, written by the treating physician at the Haight Ashbury Free Medical Clinic, as a

determination that Johnson could perform "light work."  However, the ALJ did not state that

"light duty" and "light work" were equivalent.  Rather, the ALJ found that a medical

determination of light duty was consistent with the RFC assessment that Johnson could

perform limited types of light work.  AR 20-21.

Johnson claims that light duty is a relative term given meaning by reference to

essential job duties, citing Watson v. Lithonia Lighting, 304 F.3d 749, 752 (7th Cir. 2002).

Thus, Johnson contends, if he is unable to perform all of his essential job duties, he would

be unfit to perform the job on which the light duty restriction was imposed.  It is entirely

unclear, however, which job this doctor's note was referring to, although it certainly was not

referring to his prior job as a cook supervisor, as Johnson contends, as he had quit that job

nearly four years earlier.  AR 173.

However, an ALJ may consider a treating doctor's note as evidence that the plaintiff

was <u>not</u> disabled if the note fails to present "the sort of description and recommendation

9

United States District Court

For the Northern District of California

1   one would expect to accompany a finding that [the claimant] was totally disabled under the

2   [Social Security] Act"). Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001). In Rollins,

3   the treating doctor "prescribed a conservative course of treatment, including a

4   recommendation to 'avoid strenuous activities.'" Id. The Ninth Circuit held that the note

5   was not what one would expect to accompany a finding of total disability and affirmed the

6   ALJ's decision to deny benefits. Id.

7       In the present case, the ALJ found that the Haight Ashbury Free Medical Clinic note,

8   which excused Johnson from work for five days, followed by light duty until he could be

9   examined at the hospital, was consistent with the RFC determination that Johnson was

10  capable of a limited range of light work and not disabled. AR 21. In Watson, the case that

11  Johnson cites, the court held that "light duty" was a term that specifically referred to

12  "positions (or other subsets of the full tasks) suited to employees recovering from injuries,"

13  and was not used for a permanent position for employees with permanent disabilities. 304

14  F.3d at 752. The use of this term by the treating physician is not what one would expect to

15  accompany a finding that Johnson was disabled from all work or that his impairment was

16  likely permanent. AR 21. See Rollins, 261 F.3d at 856. Rather, the medical clinic note

17  tends to show that Johnson's injury only necessitated a temporary respite from the more

18  demanding aspects of his job.

19      Further, the other two notes from treating physicians, from Johnson's two trips to the

20  emergency room, also fail to present the sort of description and recommendation that one

21  would expect to accompany a finding that Johnson was totally disabled. AR 21, 355-357.

22  The December 5, 2004 emergency room note, for example, diagnosed a separated

23  shoulder and prescribed pain and anti-inflammatory medicine, with instructions to ice his

24  shoulder for the next two to three days to reduce swelling and pain. AR 355. The

25  December 2004 note does caution that more severe separations could require surgery in

26  the future and that disability could result from improper healing. AR 355. The April 11,

27  2005 emergency room note, however, only indicates that Johnson was treated for shoulder

28  pain. AR 357. Thus, substantial evidence in the record supports the ALJ's finding that the

United States District Court

For the Northern District of California

1   treatment notes failed to support Johnson's assertion of disabling symptoms during the

2   relevant period.  AR 21.  <u>See</u> <u>Rollins</u>, 261 F.3d at 856.

3       **b.  Whether the ALJ failed to properly credit the state agency's examining**

4           **physician's opinion that Johnson was disabled.**

5       Second, Johnson contends that the ALJ failed to properly credit the state agency's

6   examining physician's opinion that Johnson was disabled.   There are three types of

7   medical opinions, and each is accorded a different evidentiary weight.  <u>Valentine</u>, 574 F.3d

8   at 692.  There are opinions from: (1) treating physicians, which are accorded substantial

9   weight; (2) examining physicians, which are accorded less weight; and (3) non-examining

10  physicians, which are accorded the least weight.  <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554

11  F.3d 1219, 1228.  <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 830-31.

12      Therefore, if there is controversy between a treating physician's opinion and an

13  examining physician's opinion, the ALJ must defer to the treating physician's opinion unless

14  he sets forth specific, legitimate reasons for rejecting it that are based on substantial

15  evidence in the record.  <u>See</u> <u>Turner v. Comm'r of Soc. Sec. Admin.</u>, 613 F.3d 1217, 1222

16  (9th Cir. 2010).  Additionally, if the ALJ rejects an examining physician's opinion in favor of

17  a different examining physician's opinion, he must provide specific, legitimate reasons

18  based on substantial evidence in the record.  <u>See</u> <u>Lester</u>, 81 F.3d at 830-31.

19      In this case, the ALJ found little support in the medical evidence for the state

20  agency's assessment that Johnson was limited to occasional use of his LUE.  AR 258.  The

21  ALJ deferred to the three notes from treating physicians, which were written during the

22  relevant time period, over the state agency's examining physician's opinion from 2008,

23  three years after the period in question.  AR 21.  Additionally, given that the treating

24  physicians' notes lacked RFC assessments, the ALJ rejected the state agency's examining

25  physician's opinion in light of the April 20, 2008 consultative examination that showed

26  Johnson had motor strength of 5/5 in his LUE and normal grip strength.  AR 21, 253.

27      Therefore, the ALJ accorded substantial weight to the treating physicians' opinions,

28  from the relevant time period, over the state agency's assessment in 2008 that found

United States District Court

For the Northern District of California

1    Johnson disabled.  AR 21.  Even if the treating physicians' notes were insufficient to

2    discount the state agency's examination, given that the notes did not contain RFC

3    assessments, the ALJ also provided specific, legitimate reasons for rejecting the state

4    agency's assessment by pointing to the motor strength and grip strength results from the

5    consultative examination on April 20, 2008.  AR 21.

6         Further, the ALJ noted that the state agency performed its assessment in 2008,

7    three years after Johnson applied for disability.  AR 21.  As a result, the agency's

8    assessment included limitations due to Johnson' finger deformities, which occurred in 2007

9    and were not relevant to Johnson's alleged disability in 2005.  AR 255-60. Therefore, the

10   ALJ properly assessed the treating and examining physicians opinions and had substantial

11   evidence supporting his RFC determination.

12   **2.        Whether the ALJ properly assessed Johnson's credibility regarding his pain**

13            **testimony**

14        The ALJ assessed Johnson's credibility and found that Johnson's statements

15   concerning the intensity, persistence, and limiting effects of his symptoms were not

16   credible.  Johnson contends that the ALJ lacked substantial evidence in discrediting

17   Johnson's pain testimony because, among other things, the ALJ improperly relied on the

18   lack of medical treatment Johnson sought.

19        In evaluating a claimant's testimony regarding subjective pain, the ALJ must engage

20   in a two step process.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ

21   must "determine whether the claimant has presented objective medical evidence of an

22   underlying impairment which could reasonably be expected to produce the pain or other

23   symptoms."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir.  2007).  Second, if the

24   claimant meets the first test, the ALJ can reject the claimant's testimony about the severity

25   of his symptoms only by offering "specific, clear and convincing reasons for doing so."  Id.

26   (internal quotation marks and citations omitted).

27        To determine whether the claimant's testimony concerning his pain is credible, the

28   ALJ must look all available evidence, including: (1) claimant's daily activities,

United States District Court

For the Northern District of California

(2) statements, including inconsistencies, from claimant, claimant's treating or nontreating source, or other persons, (3) objective medical evidence, (4) claimant's prior work record, (5) medication used by claimant to control pain, (6) treatment, or lack thereof, claimant received, and (7) capacity to perform basic work activities.  See 20 C.F.R. § 404.1529(c); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Additionally, vague and non-specific testimony regarding the nature, onset, location, frequency, and intensity of pain can be used to partially discredit a plaintiffs pain testimony. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  Finally, a plaintiff's "spotty" work history, with years of unemployment between jobs, is a valid credibility consideration and can indicate an unwillingness to work.  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Strauss v. Apfel, 2000 WL 1728083 at *1 (9th Cir. 2000).

In the first step, the ALJ found that Johnson's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 21. However, in the second step, the ALJ found that Johnson's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible.  AR 21.

Initially, the ALJ found that the objective medical evidence did not support Johnson's testimony regarding his pain.  AR 21.  As discussed above, the treatment notes from the two ER visits during the relevant time period were very brief and made no RFC assessment.  The medical records showed only limited follow-up after the ER visits.

Further, the ALJ noted that there were no follow up visits in either 2006 or 2007, and that there was no physical therapy or alternative treatment.  AR 21.  Lack of treatment, as noted above, is a legitimate reason to discredit allegations of disabling pain.  See Burch, 400 F.3d at 681.  Johnson argues that the ALJ's reliance upon a lack of medical records was improper, given that Johnson was indigent and could not afford to pay for care. However, the ALJ noted that Johnson had the ability to take advantage of local free medical care, as was apparent from Johnson's visit to the Haight Ashbury Free Medical Clinic.  AR 21.

United States District Court

For the Northern District of California

1    Additionally, the ALJ found that Johnson's lack of specificity in explaining how he

2    became injured, as well as inconsistencies as to when he became symptomatic, lessened

3    his credibility.  AR 21.  The ALJ also noted that Johnson worked as a cook supervisor after

4    the period in which he allegedly injured his shoulder.  AR 21.  Further, Johnson's wife

5    testified that Johnson had problems with his LUE since his work as a firefighter, long before

6    Johnson allegedly became disabled.  AR 21.  The ALJ found that this evidence was

7    inconsistent with Johnson's claim of becoming disabled in 2005.  AR 21.  Finally, the ALJ

8    found that Johnson had a spotty work history that further lessened his credibility.  AR 21.

9    Johnson's spotty work record, the objective medical history, the fact that he worked

10   as a cook supervisor after being injured, inconsistencies between Johnson's testimony and

11   the record, and a lack of follow up treatment are all relevant factors under 20 C.F.R.

12   § 404.1529(c)(3).  Therefore there was substantial evidence supporting the ALJ's holding

13   that Johnson's pain testimony was not credible.

14   **3.    Whether there was substantial evidence supporting the ALJ's finding that**

15        **Johnson could perform past relevant work**

16        The ALJ found at step four that Johnson could perform past relevant work.  Johnson

17   objects to the finding for three reasons, claiming that (1) the ALJ failed to develop the

18   record concerning the earnings report to determine if Johnson's work in 2000 was relevant,

19   (2) the ALJ failed to perform a function-by-function analysis of past relevant work, and

20   (3) the ALJ failed to properly account for all functional impairments on record.  However,

21   each of the three objections are unfounded and substantial evidence supports the ALJ's

22   finding that Johnson could perform his past work as a cook supervisor, as actually

23   performed.

24        **a.  Whether the ALJ failed to develop the record concerning the earnings**

25            **report to determine if Johnson's work in 2000 was relevant**

26        First, Johnson claims that the ALJ failed to establish that Johnson's work as a cook

27   supervisor rose to the level of substantial gainful activity and was thus relevant.  Johnson

28   argues that his earnings report shows that only in the year 2000 did his salary reach a level

14

United States District Court

For the Northern District of California

1   consistent with substantial gainful activity.  However, Johnson points out that the 2000

2   earnings report included a note indicating that the commissioner's staff questioned whether

3   the report included "possible duplicates."  AR 147.  Therefore, Johnson argues that the ALJ

4   should have developed the record sufficiently to resolve the questions of whether the 2000

5   earnings report was accurate and whether Johnson's work as a cook supervisor rose to the

6   level of substantial gainful activity.

7   Generally, an ALJ has "a special duty to fully and fairly develop the record and to

8   assure that the claimant's interests are considered."  Wildmark v. Barnhart, 454 F.3d 1063,

9   1068 (9th Cir. 2006) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  However,

10  an "'ALJ's duty to develop the record further is triggered only when there is ambiguous

11  evidence or when the record is inadequate to allow for proper evaluation of the evidence.'"

12  McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2010) (quoting Mayes v. Massanari, 276

13  F.3d 453, 459-60 (9th Cir. 2001)).  In the present case, the record was sufficient to show

14  that Johnson's work rose to the level of substantial gainful activity; therefore the ALJ was

15  not required to further develop the record.

16  For a past job to be relevant at Step Four of the review process, where the ALJ

17  determines whether the claimant has sufficient RFC to perform his past relevant work, it

18  must be both substantial and gainful.  See 20 C.F.R. §§ 404.1565(a), 416.965(a).

19  Substantial work activity is "work activity that involves doing significant physical or mental

20  activities," while gainful activity is "work activity that you do for pay or profit." 20 C.F.R.

21  § 416.972.  If the claimant has earned more than a certain minimum amount, the ALJ will

22  generally conclude the claimant has engaged in substantial gainful activity.  See 20 C.F.R.

23  § 404.1574(b).

24  Work performed during the year 2000 rose to substantial gainful activity if a claimant

25  was making more than $700 per month on average.  Id.  Therefore, over the course of

26  twelve months, work would be considered substantial and gainful if a claimant's yearly

27  salary was above $8400.

28

1    Johnson's earning report shows that in the year 2000, Johnson earned $13,480.42

2   as a cook supervisor.  AR 148.  However, the report also contains a note that mentions that

3   the 2000 earnings might include possible duplicates.  AR 147.  Given the notation, Johnson

4   now argues that the ALJ failed to develop the record sufficiently to resolve issues

5   concerning the accuracy of the report.

6    However, Johnson testified that he worked regularly, eight hours per day,"every

7   day," and that he had a salary of $7.25 per hour.  AR 34, 41.  At this rate, Johnson would

8   have an average monthly salary of around $1,160, well above what is required for a job to

9   be substantial and gainful.  Over a twelve month span, Johnson, had he worked every

10  weekday, would have earned approximately $13,920.  Therefore, the amount listed in the

11  2000 earnings report is consistent with Johnson's testimony.

12    Further, the record shows that Johnson claimed that he had reviewed and discussed

13  his earnings report and that it was correct, "except for 2002 and 2004," during which he

14  claimed to have worked as a cook supervisor.  AR 140.  Johnson sufficiently reviewed the

15  earnings report, as evidenced by his contention that the 2002 and 2004 figures under-

16  represented his earnings, yet never raised any objections to the amount supposedly earned

17  in 2000.  In light of Johnson's testimony and review of the earnings reports, there was no

18  need for the ALJ to further develop the record as there were no evidentiary ambiguities that

19  required further development.

20    Therefore, the ALJ sufficiently developed the record to determine that the 2000

21  earnings report was not contested, and that Johnson's past work as a cook supervisor rose

22  to the level of substantial gainful work.

23    **b.  Whether the ALJ failed to perform a function-by-function analysis of past**

24    **relevant work and account for Johnson's illiteracy**

25    Second, Johnson claims that the ALJ failed to perform a function-by-function

26  analysis of Johnson's past relevant work as a cook supervisor and also to account for

27  Johnson's illiteracy.  Johnson argues that, therefore, the ALJ could not have determined

28  that Johnson was capable of performing his past work as actually performed.  However, the

United States District Court

For the Northern District of California

1    ALJ properly questioned Johnson about his past duties as a cook supervisor, including the

2    physical and mental demands of the previous work, and then used this information when

3    presenting hypothetical questions to the VE.

4         The ALJ, when determining whether a plaintiff can perform past relevant work, must

5    compare the RFC assessment with the physical and mental demands of the prior work.  20

6    C.F.R. § 416.1520(f).  Additionally, the ALJ must rely upon the claimant's testimony, rather

7    than the DOT, to define the claimant's past relevant work as performed.  SSR 82-41; Pinto

8    v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001).  Further, the burden falls upon the plaintiff

9    to prove that he cannot perform his prior work either as he actually performed it or as

10   generally performed in the national economy.  See Carmickle v. Comm'r of Soc. Sec., 533

11   F.3d 1155, 1166 (9th Cir. 2008).

12        In the present case, the ALJ developed the record concerning the physical and

13   mental demands of Johnson's past relevant work as a cook supervisor through Johnson's

14   testimony.  AR 53-55.  Johnson testified that he performed no lifting as a cook supervisor,

15   neither inside nor outside the kitchen, and that he didn't actually cook at all.  AR 53-54.

16   Additionally, Johnson later testified that he didn't need to read as part of his duties while

17   working as a cook supervisor.  AR 75-76.  Further, Johnson stated that his only duties were

18   to supervise the workers who performed the manual labor.  AR 55.

19        When the ALJ presented hypotheticals to the VE, he asked if a claimant, whose

20   limitations mirrored Johnson's RFC, could perform the cook supervisor job as Johnson had

21   described it.  AR 68-69.  The VE answered affirmatively, and testified that Johnson's duties,

22   as performed, were easier than a normal cook supervisor's duties, which would normally be

23   considered light work under the DOT.  AR 68-69.  However, at step four, consistency with

24   the DOT is not relevant where the ALJ relies on a claimant's prior work as actually

25   performed.  See Tweedy v. Astrue, 60 Fed. App'x 659, 661 (9th Cir. 2011) (holding that

26   because "the ALJ's conclusion regarding her previous work, as actually performed, is

27   supported by substantial evidence in the record, the Court need not address Tweedy's

28

**United States District Court**
For the Northern District of California

1    argument regarding the DOT, which relates to the determination for how a job is generally

2    performed in the national economy").

3       Further, Johnson contends that the VE failed to account for Johnson's illiteracy, but

4    the record shows that the ALJ clearly stated that the VE was to consider Johnson illiterate

5    for the purposes of the hypothetical. AR 68. Additionally, Johnson's testimony that he was

6    not required to read as part of his employment as a cook supervisor precludes him from

7    being found unable to perform that past relevant work as a result of his illiteracy. AR 75-

8    76.

9       Therefore, the ALJ, through Johnson's testimony, determined the physical and

10    mental demands of Johnson's past work as a cook supervisor. AR 22, 53-55. Then, the

11    ALJ presented a hypothetical to the VE, asking if a claimant with Johnson's RFC, including

12    his illiteracy, could perform the cook supervisor position as Johnson had described it. AR

13    68-69. The VE responded that a claimant with the described RFC could perform the cook

14    supervisor position as Johnson had performed it in the past. AR 69. Thus there was

15    substantial evidence supporting the ALJ's determination that Johnson was capable of

16    performing past relevant work as a cook supervisor, as actually performed. AR 22.

17    Therefore, because Johnson could perform his past relevant work as a cook supervisor, he

18    is not disabled.

19   **4.**      **Whether the ALJ properly found that Johnson could perform work in the**

20         **national economy**

21       Although the ALJ found Johnson able to perform his past relevant work as a cook

22    supervisor, the ALJ continued on to step five to make alternative findings. AR 22. At step

23    five, the ALJ determined that there are other jobs existing in the national economy that

24    Johnson is also able to perform. AR 22. At this step, the Commissioner bears the burden

25    to prove that Johnson can perform other work in the national economy, given Johnson's

26    RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Silveira v. Apfel, 204

27    F.3d 1257, 1261 n.14 (9th Cir. 2000).

28

United States District Court

For the Northern District of California

1   Johnson argues that at step five, the ALJ (1) failed to properly apply the Medical-

2   Vocational grids, (2) failed to provide the VE with complete hypotheticals regarding illiteracy

3   and dominant hand restrictions, (3) failed to resolve conflicts between the VE's testimony

4   and the DOT, and (4) disregarded the VE's testimony concerning the availability of jobs in

5   the national economy.

6   However, given that the ALJ found Johnson was capable of performing his past

7   relevant work as a cook supervisor, any error made by the ALJ at step five is harmless and

8   would not affect the finding from step four that Johnson is not disabled.  See Tommasetti v.

9   Astrue, 533 F.3d at 1038 ("the court will not reverse an ALJ's decision for harmless error,

10  which exists when it is clear from the record that the ALJ's error was inconsequential to the

11  ultimate nondisability determination").

12      **a. Whether the ALJ failed to properly apply the Medical-Vocational grids**

13  First, Johnson argues that the ALJ failed to properly apply the Medical-Vocational

14  grids.  Johnson contends that the ALJ should have found him per se disabled under the

15  Medical Vocational Guidelines.

16  The Medical-Vocational Guidelines are a matrix system for handling claims that

17  involve substantially uniform levels of impairment.  See id.  However, the guidelines may be

18  used only where they "completely and accurately represent a claimant's limitations."

19  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).  Accordingly, if a claimant suffers

20  from non-exertional limitations, such as pain or environmental limitations, the ALJ may not

21  apply the grids because they are based on strength factors only.  See 20 C.F.R. Part 404,

22  Subpt. P, App. 2, § 200.00(e); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d

23  573, 577 (9th Cir. 1988).  However, if a claimant's limitations are both exertional and non-

24  exertional, the "ALJ must consult the grids first" before utilizing the testimony of the VE.

25  See Lounsbury v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006).

26  In the present case, Johnson's strength is not a debilitating factor that limits him to

27  sedentary work.  AR 20-22.  The April 20, 2008 consultative examination showed Johnson

28  had motor strength of 5/5 in his LUE and normal grip strength.  AR 21.  Thus the ALJ found

1   that Johnson was capable of performing light work as defined in 20 C.F.R. 404.1567(b).

2   AR 20.  Upon examining the grids, the ALJ found that a claimant of Johnson's age,

3   education, and work experience is "not disabled."  AR 22-23.  See 20 C.F.R. Part 404,

4   Subpt. P, App. 2, 201.17.

5        However, Johnson also suffered from non-exertional limitations, consisting of

6   shoulder pain and environmental limitations stemming from his COPD.  AR 19-20.

7   Therefore, it would be inappropriate to use the Medical-Vocational Guidelines because

8   Johnson can not perform the full range of light work given his non-exertional limitations.

9   AR 20, 23.  Further, Johnson acknowledges it could be assumed that his non-exertional

10  limitations are an appropriate basis for removing him from the grids.

11       Therefore, the ALJ consulted the grids, as required, but properly found that

12  Johnson's non-exertional limitations were appropriate grounds not to rely on the grids.  AR

13  23.  Further, the ALJ posed hypotheticals to the VE to determine "the extent to which

14  [Johnson's non-exertional] limitations erode[d] the unskilled light occupational base."  AR

15  23.  Thus, the ALJ did not err in his application of the Medical-Vocational grids.

16       **b. Whether the ALJ provided the VE with incomplete hypothetical regarding**

17          **illiteracy and dominant hand restrictions**

18       Next, Johnson argues that the ALJ failed to provide the VE with a complete

19  hypothetical including Johnson's illiteracy and dominant hand restrictions.  Although

20  Johnson raises this issue in the introduction of his motion, he fails to argue the issue in his

21  analysis.  It is clear why.

22       At an administrative hearing, if an ALJ calls upon a VE to testify, the ALJ must pose

23  "hypothetical questions to the [VE] that 'set out all of the claimant's impairments' for the

24  [VE's] consideration."  Tackett v. Apfel, 180 F.3d at 1101 (citing Gamer v. Sec'y of Health &

25  Human Servs., 815 F.2d 1275, 1279 (9th Cir. 1987)).  The ALJ's hypothetical questions

26  must depict the claimant's impairments and limitations, and must be supported by the

27  record.  Id.

28

United States District Court
For the Northern District of California

1    The record shows that the ALJ properly provided the VE with a complete

2    hypothetical, including Johnson's illiteracy and dominant hand restrictions.  The ALJ, when

3    posing the hypothetical to the VE, stated, "[w]ell first, I'd like to ask you to assume an

4    individual age 48 with a ninth grade education, but **consider such an individual would be**

5    **functionally illiterate . . . [and] could frequently but not constantly use the dominant,**

6    **left, upper extremity for reaching in all directions and also for fine and gross**

7    **manipulation.**"  AR 68.   When the VE responded with a number of possible positions that

8    such an individual would qualify for, the ALJ asked whether "such work [could] be

9    performed, the lifting involved, **using one arm as a helper hand, and using the, the**

10   **nondominant arm as the primary arm to lift.**"  AR 70.  Thus the limitations that the ALJ

11   asked the VE to consider exactly mirrored Johnson's determined RFC.  Therefore the

12   hypothetical was complete and did not improperly exclude limitations regarding illiteracy

13   and dominant hand restrictions.

14       **c.  Whether the ALJ failed to resolve conflicts between the VE's testimony and**

15       **the DOT**

16       Further, Johnson argues that the ALJ failed to resolve conflicts between the VE's

17   testimony and the DOT regarding what jobs would be precluded by Johnson's illiteracy.

18   Johnson argues that even the lowest language level of 1 requires some recognition of

19   words and that therefore his illiteracy presumptively precludes him from language level 1

20   jobs.  Therefore, Johnson argues that the ALJ did not explain the deviation between the

21   VE's testimony that Johnson could perform other jobs in the economy and the DOT

22   description of those jobs as level 1 language jobs.

23       The ALJ is only required to resolve conflicts when the VE's testimony deviates from

24   the DOT.  SSR 00-4P, 2000 WL 1898704, at *2.  However, the DOT merely lists the

25   maximum requirements of an occupation while a VE can provide more specific information.

26   Id. at *3.  Additionally, the DOT does not preclude illiterate individuals from performing level

27   1 language jobs, otherwise illiteracy would be a per se disability.  See, e.g., Meza v. Astrue,

28   2011 WL 11499, at *21 (January 4, 2011 N.D. Cal.)  ("[t]he Social Security Regulations

21

United States District Court

For the Northern District of California

1    indicate that a claimant is not disabled simply because he is functionally illiterate").

2    Therefore, VE testimony that an illiterate claimant can perform certain level 1 language jobs

3    is not in conflict with the DOT.  Id.

4         In the present case, the VE testified that Johnson, as a functional illiterate, could

5    perform jobs such as a small products assembler, DOT 706.684-002, even though they

6    have a language level of 1.  AR 69.  The VE testified that the small products assembler job

7    "requires no reading."  AR 77.  Additionally, the VE testified that this opinion was consistent

8    with the DOT, and Johnson has not demonstrated otherwise.  AR 70.  Therefore, the ALJ

9    was not required to resolve conflicts between the VE's testimony and the DOT.

10        **d.  Whether the ALJ disregarded the VE's testimony concerning the**

11            **availability of jobs in the national economy**

12        Finally, Johnson argues that the ALJ disregarded the VE's testimony as to whether

13   any jobs existed in the national economy that Johnson, with his limited RFC, could perform.

14   Johnson contends that the only one job that the VE identified Johnson could perform, with

15   his dominant left hand limited as a "helper hand," was a mail attendant, which required a

16   higher level of literacy than Johnson had.

17        At this stage of the analysis, the ALJ clearly erred.  The VE testified that a claimant

18   with Johnson's RFC, including having his dominant hand relegated to a "helper hand,"

19   could perform work as a video rental clerk or a mail clerk.  AR 70-71.  However, the VE

20   testified that a claimant whose dominant hand was relegated to a "helper hand" could not

21   perform work as a small products assembler.  AR 70, 78.  The VE stated that, "in the

22   assembly work, the work would be frequent with both hands.  I mean, I don't think he could

23   really use a helper hand in that."  AR 70.  This is in direct contrast with the ALJ's finding

24   that the VE testified that Johnson could perform the work of a small products assembler

25   despite his RFC limitations.  AR 23.

26        Additionally, when Johnson's attorney asked how a functional illiterate could work as

27   either a video rental clerk or a mail clerk, the VE admitted that Johnson could not perform

28

United States District Court

For the Northern District of California

1  either job.  AR 72-73.  Again, this is in direct contrast with the ALJ's findings that the VE

2  testified that Johnson could perform the work of a video rental clerk.  AR 23.

3      Therefore, it is clear that the ALJ erred in step five by finding that "there are other

4  jobs existing in the national economy that [Johnson] is also able to perform."  AR 22.

5  However, the court may not reverse an ALJ's decision if the error is harmless and is

6  "inconsequential to the ultimate nondisability determination."  Tommasetti, 533 F.3d at

7  1038.  Further, "[t]he burden of showing that an error is harmful normally falls upon the

8  party attacking the agency's determination."  Molina, 674 F.3d at 1111 (citing Shinseki v.

9  Sanders, 556 U.S. 396, 409 (2009)).

10     The ALJ's error in step five is harmless because it is "inconsequential to the ultimate

11  nondisability determination."  The ALJ had substantial evidence in finding, at step four, that

12  Johnson was not disabled because he could perform his past relevant work, as actually

13  performed.  Johnson has failed to show how any error at step five was not harmless in light

14  of the findings at step four.  Therefore, because the ALJ was not required to rule on step

15  five, any error that he committed at that step was inconsequential to the nondisability

16  determination.

17                          **CONCLUSION**

18     The court DENIES Johnson's motion for summary judgment, GRANTS the

19  Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's

20  final decision to deny benefits for four reasons:

21      (1) The ALJ properly considered the treating physicians' opinions from the relevant

22          time period and had substantial evidence supporting the finding that there was a

23          lack of objective medical evidence that Johnson was disabled in 2005.

24      (2) The ALJ had substantial evidence in finding that Johnson's pain testimony was

25          not credible.  Johnson's testimony was inconsistent with his previous statements,

26          the objective medical history, his work record, and the testimony of others.

27      (3) The ALJ had substantial evidence in finding that Johnson could perform his past

28          relevant work as a cook supervisor, as actually performed.  Additionally, there is

substantial evidence, including Johnson's testimony, that his work as a cook supervisor in 2000 rose to the level of substantial and gainful.  Further, Johnson's work as a cook supervisor did not require any lifting or literacy and Johnson performed the work well after his exertional and non-exertional limitations had manifested.

(4) The ALJ erred in finding that there was other work in the national economy that Johnson could perform.  Johnson was precluded from being a small products assembler or video rental clerk due to his RFC limitations and his illiteracy.  However, any error made by the ALJ in step five is harmless, given that it does not affect the finding from step four that Johnson was not disabled during the relevant time period.

This order fully adjudicates the motions listed at numbers nineteen and twenty-six of the clerk's docket for this case.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  July 30, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge